IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                                                                   PLAINTIFF,

v.                                              CIVIL ACTION NO. __1:20cv17LG-RHW__

$9,100.00 UNITED STATES CURRENCY;
and $3,525.00 UNITED STATES CURRENCY,                        DEFENDANT PROPERTY.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America, by and through its United States Attorney and the undersigned Assistant U.S. Attorney for the Southern District of Mississippi, brings this Verified Complaint for Forfeiture *in rem,* in accordance with Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions ("the Supplemental Rules") and the Federal Rules of Civil Procedure, and alleges as follows:

## NATURE OF THE ACTION

1.  This is an action by the United States seeking forfeiture of $9,100.00 United States Currency seized from Sigi Lopez and $3,525.00 United States Currency seized from Leopoldo Alvarez (the "defendant property").  The defendant property is subject to forfeiture under 21 U.S.C. § 881, 18 U.S.C. §§ 981(a)(1)(A) and (C), and 31 U.S.C. § 5332(c) because the defendant property is involved in or constitutes the proceeds of drug trafficking and was being transmitted by courier, in violation of 21 U.S.C. § 841 (drug trafficking) and § 846 (drug conspiracy), 18 U.S.C. § 1956(a)(1) (money laundering), 18 U.S.C. § 1956(a)(2) (international money laundering), 18 U.S.C. § 1956(h) (money laundering conspiracy), 31 U.S.C. § 5332 (bulk cash smuggling), and/or 18 U.S.C. § 1960 (unlicensed money transmitting businesses).

1

## THE DEFENDANT *IN REM*

2. The defendant property consists of $9,100.00 United States Currency and $3,525.00 United States Currency, which were seized by the U.S. Drug Enforcement Administration on April 2, 2019, in Gulfport, Mississippi, within the Southern District of Mississippi, Southern Division.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345, and over an action for forfeiture *in rem* under 28 U.S.C. § 1355.

4. Venue is proper in the Southern Division of the Southern District of Mississippi pursuant to 28 U.S.C. §§ 1355(b)(1)(A) and 1395(a), because the acts and/or omissions giving rise to the forfeiture occurred in this district and/or pursuant to 28 U.S.C. § 1395(b), because the defendant property was found and seized in this District.

## BASIS FOR FORFEITURE

5. The defendant property is subject to forfeiture under 21 U.S.C. § 881, 18 U.S.C. §§ 981(a)(1)(A) and (C), and 31 U.S.C. § 5332(c) because the defendant property is involved in or constitutes the proceeds of drug trafficking and was being transmitted by courier, in violation of 21 U.S.C. § 841 (drug trafficking) and § 846 (drug conspiracy), 18 U.S.C. § 1956(a)(1) (money laundering), 18 U.S.C. § 1956(a)(2) (international money laundering), 18 U.S.C. § 1956(h) (money laundering conspiracy), 31 U.S.C. § 5332 (bulk cash smuggling), and/or 18 U.S.C. § 1960 (unlicensed money transmitting businesses).

6. The Controlled Substances Act, 21 U.S.C. § 801, *et seq.,* and 21 U.S.C. § 881 make subject to forfeiture to the United States any proceeds derived, and any facilitating property, from

any knowing violation of 21 U.S.C. §§ 841(a)(1), 846, and 848, which is drug distribution, drug conspiracy, and continuing criminal enterprise.

7.  Title 18, United States Code, Section 981(a)(1)(A), makes subject to forfeiture to the United States any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960, or any property traceable to such property.  Title 18, United States Code, Section 981(a)(1)(C), makes subject to forfeiture to the United States any property, real or personal, which constitutes or is traceable to a violation of any offense constituting "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)), or a conspiracy to commit such offense.

8.  Both 21 U.S.C. § 881(h) and 18 U.S.C. § 981(f) provide that all right, title, and interest in property described in 21 U.S.C. § 881(a) and 18 U.S.C. § 981(a) shall vest in the United States upon commission of the act giving rise to forfeiture under 21 U.S.C. § 881 and 18 U.S.C. § 981.

## FACTS AND CIRCUMSTANCES

9.  A detailed account of the facts and circumstances of the search and seizure at issue and the basis for this instant forfeiture action is set out in the Declaration of DEA Task Force Agent Robert Drace, attached hereto as Exhibit "A" and fully incorporated herein by reference.

## CLAIM FOR RELIEF

10.  Plaintiff United States requests that the Clerk of Court for the U.S. District Court for the Southern District of Mississippi issue an Arrest Warrant *in rem* for the arrest of the defendant property under Supplemental Rule G(3)(b), which the United States will execute upon the defendant property located in the custody of the DEA under 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

11. Plaintiff United States prays that process issue to enforce the forfeiture of the defendant property and that all persons having an interest in the defendant property be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the defendant property to the United States for disposition according to law and that this Court grant the United States such further relief as this Court may deem just and proper, together with the costs and disbursements in this action.

January 15, 2020                                      Respectfully submitted,

                                                      UNITED STATES OF AMERICA

                                                     D. MICHAEL HURST, JR.
                                                     United States Attorney

By:    */s/ Marc. A. Perez*
        MARC A. PEREZ
        Assistant United States Attorney
        WA Bar Number 33907
        501 E. Court Street, Suite 4.430
        Jackson, Mississippi 39201
        (601) 965-4480 Voice
        (601) 965-4409 Fax
        Email: Marc.Perez@usdoj.gov

## VERIFICATION

I, Robert W. Drace, hereby verify and declare under penalty of perjury that I am a Task Force Agent with the Drug Enforcement Administration (DEA), that I have read the foregoing Verified Complaint for Forfeiture *in rem* and know the contents thereof, and that the matters contained in the Verified Complaint for Forfeiture *in rem* are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States of America, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a DEA Special Agent.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated this the 15th day of January, 2020.

                                                    _____
                                                    ROBERT W. DRACE
                                                    Task Force Agent
                                                    Drug Enforcement Administration

State of Mississippi
County of Harrison

Sworn to and subscribed before me, this day the 15th day of January, 2020.

                                                    _____
                                                    NOTARY PUBLIC

My commission expires:

5

# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

## DECLARATION IN SUPPORT OF VERIFIED COMPLAINT

Under 28 U.S.C. § 1746, I, Robert W. Drace, Task Force Agent, Drug Enforcement Administration, United States Department of Justice, make the following unsworn declaration, under the penalty of perjury, pertinent to the above-styled and numbered case:

### I.  Introduction

1.  This affidavit is made in support of a Verified Civil Complaint for forfeiture of property seized pursuant to a valid traffic stop. There is probable cause to believe that the property was involved in or constitutes the proceeds of drug trafficking and was being transmitted by courier, in violation of 21 U.S.C. § 841 (drug trafficking) and § 846 (drug conspiracy), 18 U.S.C. § 1956(a)(1) (money laundering), 18 U.S.C. § 1956(a)(2) (international money laundering), 18 U.S.C. § 1956(h) (money laundering conspiracy), 31 U.S.C. § 5332 (bulk cash smuggling), and 18 U.S.C. § 1960 (unlicensed money transmitting businesses), and is therefore subject to forfeiture under 21 U.S.C. § 881, 18 U.S.C. § 982(a)(1), and 31 U.S.C. § 5332(c). This affidavit is based upon my personal knowledge and experience obtained as case agent in the above case and information I have received from other law enforcement officials.

### II.  Declarant's Background and Experience

2.  I have been a sworn law enforcement officer with the Harrison County Sheriff's Office since February 2002, and was deputized as a DEA Task Force Agent in September 2013. As a DEA Task Force Agent, I am authorized to perform duties as provided by law and department regulations, including participating in investigations of violations of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.* I have received special training in the enforcement of

1

**EXHIBIT A**

the Controlled Substances Act.

3. By virtue of my employment as a law enforcement officer, I have performed and continue to perform various duties, including, but not limited to:

a. Participating in and conducting investigations that have resulted in the arrest and conviction of individuals who have smuggled, received, and distributed unlawful substances, as well as the seizure and forfeiture of illegal drugs and proceeds derived from the sale of those illegal drugs;

b. Participating in and conducting investigations concerning the concealment of narcotics-produced assets, including money, bank accounts, vehicles, and homes, and the identification of co-conspirators through the use of ledgers, telephone bills and records, and photographs;

c. Conducting various types of electronic surveillance;

d. Executing search and arrest warrants;

e. Debriefing defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from controlled substance trafficking; and

f. Participating in traffic stops of persons suspected of transporting controlled substances and/or proceeds from the sale of controlled substances.

4. Through training and experience, and through the training and experience of other narcotics agents with whom I have talked, I have learned the following:

a. That large-scale drug traffickers maintain and handle large amounts of United States currency in order to finance their ongoing drug business;

**EXHIBIT A**

b.     That it is common practice for large-scale drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in locations within their residences, vehicles, and/or place of business to conceal them from law enforcement authorities;

c.     That persons involved in large-scale drug trafficking often use hidden compartments or "traps" to conceal contraband in their vehicles; these traps may be simple, like a panel inside the engine compartment or in a door panel, or sophisticated, electronically controlled compartments, which require complicated procedures for access;

d.     That it is a common practice for large-scale drug traffickers to travel to distribution areas to facilitate their trafficking; that after purchasing drugs, the drug trafficker will transport, or cause to be transported, drugs to other areas for distribution; and that the methods of transportation include, but are not limited to, rental and private automobiles;

e.     That traffickers will utilize vacuum seal bags and/or rubber bands to bundle their illegal proceeds for transport back to Mexico; vacuum sealing the money makes it more difficult for law enforcement K9 units to detect trace amounts of illegal drugs which have touched the drug proceeds;

f.     That, generally, illegal drugs are transported north from Mexico into the United States, while drug proceeds are transported south from the United States into Mexico;

g.     That drug trafficking organizations often demand proof—such as a receipt from the seizing authority—from their couriers that the contraband or drug proceeds were seized by law enforcement authorities; consequently, traffickers may seem anxious about receiving a receipt, even when the individual is disclaiming or denying ownership of the seized asset;

h.     That, in an effort to avoid law enforcement detection, members of drug trafficking organizations frequently use inexpensive, prepaid cellphones, often called "drop phones,"

**EXHIBIT A**

because they can be used to communicate between members of the organization and discarded easily; and

  i.  That the Courts have recognized unexplained wealth is probative evidence of criminal violations by pecuniary gain, in particular trafficking in controlled dangerous substances. *See United States v. Chagra,* 669 F.2d 241, 256 (5th Cir. 1982), *overruled on other grounds.*

### III. Property to be Forfeited

5. **$9,100.00 in United States Currency (19-DEA-651033) seized from Sigi Lopez;** and

**$3,525.00 in United States Currency (19-DEA-652065) seized from Leopoldo Alvarez**

### IV. Facts and Circumstances

6. On April 22, 2019, at approximately 4:10 p.m., Task Force Officer Chris Sexton of the DEA High Intensity Drug Trafficking Interdiction Unit observed a 2019 Chevrolet Malibu displaying a Texas license plate (LRL1065) traveling westbound on Interstate 10 at the 33-mile marker in Gulfport, Mississippi. After witnessing the driver's careless driving and speeding[1], TFO Sexton stopped the car. When TFO Sexton conducted a records check, he discovered the Malibu was a rental vehicle.

7. TFO Sexton approached the vehicle and spoke[2] to the driver, identified as Sigi

---

[1] TFO Sexton observed the vehicle veer from right to left in the fast lane, and at one point hit the lane divider. Sexton also paced the vehicle at approximately 78 miles per hour (in a 70-mile per hour zone) for more than two miles.

[2] TFO Sexton spoke to both men in English. Neither man requested an interpreter, and both spoke English clearly and appeared to understand the officer.

**EXHIBIT A**

LOPEZ and the passenger, identified as Leopold ALVAREZ, by their respective Texas driver's licenses.  After TFO Sexton explained why he pulled them over, LOPEZ apologized and stated that he dropped his mobile telephone in his lap while driving.  TFO Sexton noticed that both LOPEZ and ALVAREZ appeared to be nervous: LOPEZ's hands shook as he handed over his driver's license and ALVAREZ breathed heavily while his stomach trembled.

8.      TFO Sexton relocated LOPEZ to the front seat of his patrol car, wrote a warning for the traffic violations, and conducted routine computer checks.  As he did so, TFO Sexton engaged LOPEZ in casual conversation.  LOPEZ stated that he and ALVAREZ were returning from Atlanta, Georgia, where they went to look at a vehicle that ALVAREZ was interested in purchasing.  LOPEZ further related that ALVAREZ owned a business, however, he was unable to provide the name or purpose of the business.  LOPEZ's hands shook as he spoke during this conversation.

9.      TFO Sexton asked both LOPEZ and ALVAREZ about their travel itinerary.  Both men claimed that they drove from the Southern Texas border area near McAllen, Texas, to an area near Atlanta, Georgia,[3] for the sole purpose of examining and purchasing a vintage car that they failed to purchase.  Within a day, they returned home.  TFO Sexton learned that ALVAREZ was previously investigated for drug trafficking and previously had assets seized as drug proceeds.  LOPEZ had no known criminal history.  Lieutenant Brandon Hendry and Deputy Sheriff Jerry Thomley, both of the Harrison County Sheriff's Office, arrived at the scene to assist TFO Sexton.

---

[3] A one-way trip from McAllen, Texas, to Atlanta, Georgia, is 1,138.4 miles.  Such a trip would take more than 17 hours, each way, not including traffic delays or stops for rest, meals, and gas.

**EXHIBIT A**

10. Given the men's nervousness and implausible story, TFO Sexton presented LOPEZ and ALVAREZ with a form authorizing a search of the car. Both men reviewed and signed the consent form. The officers searched the vehicle, and found a black bag in the trunk containing United States currency bound with rubber bands, later determined to total $9,100.00. In the back seat, officers found a black bag containing United States currency, later determined to be $3,529.00. LOPEZ claimed the bag in the trunk belonged to him and ALVAREZ claimed the bag on the back seat belonged to him. The officers also located multiple mobile telephones in LOPEZ's and ALVAREZ's possession (three mobile telephones belonged to LOPEZ, and two mobile telephones belonged to ALVAREZ).

11. When I arrived at the Sheriff's Office, I interviewed LOPEZ first, who reiterated that he and ALVAREZ had traveled from Texas to an area around Atlanta, Georgia, to look at a vehicle ALVAREZ was interested in buying. LOPEZ could not identify the type of vehicle, where they went to look at the vehicle, or with whom they met, except that the alleged seller was a dark-skinned black male. LOPEZ claimed the money he possessed was for the purchase of a vehicle if he ran across one during their trip.

12. I also spoke to ALVAREZ whose story coincided with LOPEZ, with the exception that they met a light-skinned black male to look at the vehicle. ALVAREZ added he was going to pay $20,000.00 for the vehicle, although ALVAREZ had only $3,525.00 in cash, and ALVAREZ and LOPEZ together only had $12,625.00. While LOPEZ's and ALVAREZ's accounts of their travel coincided, they were both unable to produce any documentation, details of the alleged vehicle ALVAREZ wanted to buy, communication with the seller, or an address of where they supposedly went to look at the vehicle. LOPEZ could not even describe the car they looked at or what transpired during the meeting with the seller.

**EXHIBIT A**

13.     When I asked about their employment, LOPEZ claimed to own and operate semi-trucks with an income of $2,500 to $5,000 a week ($130,000 to $260,000 a year). LOPEZ was asked if he had the business registered; after hesitating, he claimed the business was registered as his name. ALVAREZ claimed to own a body shop and to be involved in construction with a yearly income of $100,000, although he could not produce any documentation regarding his businesses.[4]

14.     I believed, based on these facts and circumstances, there existed probable cause that LOPEZ and ALVAREZ were involved in drug trafficking or acted as money couriers of illicit proceeds. Accordingly, I seized two mobile telephones from LOPEZ[5] and both sums of currency. As TFO Sexton and I prepared to bag the currency in front of LOPEZ, he demanded that we count the currency. We advised him that such a count was not in accordance with DEA policy. His hands shaking, LOPEZ became agitated and replied, "I have to answer for that, they are going to think I had more than I did, I need you to count and verify it."

15.     While I was interviewing LOPEZ and ALVAREZ, I also had Harrison County

---

[4] Although neither man was able to provide the name of his business to the officers, a subsequent check of the Texas Secretary of State's business filing database shows that the two men have incorporated businesses in Texas. Silo Transport LLC was incorporated on July 12, 2017. LOPEZ is listed as the registered agent and the manager. Alvarez International, LLC was incorporated on May 9, 2014; ALVAREZ is listed as the registered agent. Leo's Auto Sales was incorporated on May 9, 2014; ALVAREZ is listed as a director and member. Lucky Barrel, LLC was incorporated on October 4, 2017, ALVAREZ is listed as the registered agent. Alvarez Real Estate Investment Corporation was incorporated on October 23, 2019; ALVAREZ is listed as the registered agent. None of these businesses appear to have a presence on the internet, nor were phone numbers available for the businesses.

[5] The two phones were inexpensive and the type often called as "drop phones"; one Black LG smart phone, Serial # IMEI357091086081567 and one Black Samsung Galaxy, Serial #IMEI355270091511022, were seized as evidence. After retrieving the data from the phones—pursuant to a search warrant—the phones were returned to LOPEZ on August 20, 2019.

**EXHIBIT A**

Sheriff's Office K9 Deputy Chris Allen and his K9 partner Zico conduct separate controlled canine sniffs of each sum of currency, resulting in a positive response for the presence of controlled substances on each sum.

16. LOPEZ and ALVAREZ were released.

17. DEA Intelligence Research Specialist John Metcalf forensically examined LOPEZ's "drop" mobile telephones. Specialist Metcalf and I discovered several coded text messages on the mobile telephones. We deciphered the coded messages, which I interpreted to be discussing the distribution of large quantities of drugs ranging from 150 to 200 kilograms at a cost of $29,000 each. There was also a message from LOPEZ inquiring about a meeting location and time, with Lopez becoming upset due to another individual's tardiness. In addition, the mobile telephones contained photos of a "trap" or improvised hidden compartment, where a bundle of drugs or currency was attached to a string for retrieval, and a photograph of a Texas driver's license along with a text asking for insurance information to register vehicles under a third-party's name.

18. In early July 2019, the DEA Atlanta Field Division and McAllen (Texas) District Office notified me that they were investigating a large-scale drug trafficking organization in Mexico, which is supplying an Atlanta-based cell. In July 2019, DEA intercepted communications in which the drug trafficking organization arranged to deliver cocaine to customers in Reynosa, Mexico. The DEA passed leads to the Tamaulipas State Police Intelligence Unit, which seized approximately $1.5 million in drug proceeds. Through the exploitation of one of the arrestee's telephones, DEA was able to identify a telephonic link between the major drug trafficking organization and the money seized on April 22, 2019, from LOPEZ and ALVAREZ in Gulfport, Mississippi.

**EXHIBIT A**

19. As a result of the April 2019 seizure, the DEA Gulfport office investigated LOPEZ as a suspected money courier attempting to transport bulk currency back to Texas. LOPEZ's mobile telephones contained numerous text messages discussing the transportation of narcotics and bulk currency between LOPEZ and other previously known mid-level cocaine and heroin distributors in the Atlanta area.

20. As a result of the analysis of the data from LOPEZ's mobile telephones, the DEA identified Oscar JIMENEZ, who was arrested in July 2019 at the United States Border Patrol checkpoint in Falfurrias, Texas, with approximately 13 kilograms of heroin. According to JIMENEZ, the heroin was destined to an Atlanta (Georgia)-based cell.

21. In October 2019, exploiting cellular data retrieved from the mobile telephones seized in this and other case, the DEA identified a current telephone number for the head of an Atlanta-based drug trafficking cell. On October 15, 2019, federal agents located and arrested the head of the cell, and seized $690,007 United States currency, 13 kilograms of cocaine, and 1 firearm.

V. **Conclusion**

22. I have concluded that probable cause exists to seize both sums of currency as drug proceeds. My conclusion is based on (1) the implausible travel itinerary involving a less than two-day trip, with more than 17 hours of travel time in each direction and an immediate turn around, solely to look at a vehicle LOPEZ and ALVAREZ were only interested in and not committed to purchase; (2) LOPEZ's and ALVAREZ's inability to provide any pertinent or specific details of the interaction with the seller of the alleged vehicle; (3) LOPEZ's and ALVAREZ's possession of multiple mobile telephones where each had a personal telephone with a subscriber service and additional prepaid phones; (4) LOPEZ's and ALVAREZ's known

**EXHIBIT A**

ties to Mexico, leaving a source city of narcotics, and traveling to a known consumer and distribution hub for narcotics; (5) LOPEZ's and ALVAREZ's traveling in a rental car rather than their own personal vehicle or flying in commercial aircraft; (6) ALVAREZ's criminal history of involving narcotics and possession of illicit drug proceeds; and (7) the amount of currency being consistent with transportation and facilitation costs associated with trafficking narcotics or payment for services.

23. Additionally, LOPEZ and ALVAREZ have been identified as co-conspirators with ties to large-scale drug trafficking organizations, whose members have been arrested for distribution of kilogram quantities of cocaine and heroin. More than one million dollars in bulk currency have been seized from the co-conspirators and drug trafficking organizations in which LOPEZ and ALVAREZ are known associates.

24. I reasonably believe that the money was intended to facilitate or used to further a drug crime, or is directly related to drug proceeds of LOPEZ and ALVAREZ or their associates, all in violation of 21 U.S.C. § 841 (drug trafficking) and § 846 (drug conspiracy), 18 U.S.C. § 1956(a)(1) (money laundering), 18 U.S.C. § 1956(a)(2) (international money laundering), 18 U.S.C. § 1956(h) (money laundering conspiracy), 31 U.S.C. § 5332 (bulk cash smuggling), and/or 18 U.S.C. § 1960 (unlicensed money transmitting businesses), and is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881, 18 U.S.C. § 982(a)(1), and 31 U.S.C. § 5332(c).

**EXHIBIT A**

25. I declare, pursuant to 28 U.S.C. § 1746, that the foregoing is true and accurate to the best of my knowledge and belief.

Executed this 15th day of January, 2019.

*Robert W. Drace*
Task Force Agent
Drug Enforcement Administration

**EXHIBIT A**

◎JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

1:20-cv-17-LG-RHW

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
$9,100.00 United States Currency; and $3,525.00 United States Currency

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Harrison County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Marc A. Perez, U.S. Attorney's Office
501 East Court Street, Suite 4.430, Jackson, MS 39201 (601) 965-4480

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☒ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☒ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
21 U.S.C. 881, 18 U.S.C. 981(a)(1)(A) and (C), 31 U.S.C. 5332(c)

Brief description of cause:
Civil forfeiture of $9,100.00 and $3,525.00, seized from Sigi Lopez and Leopoldo Alvarez, respectively

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions:) JUDGE _____ DOCKET NUMBER _____

DATE: 1/3/2020

SIGNATURE OF ATTORNEY OF RECORD: /s/ Marc A. Perez

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____